ODOM Justice.
 

 This is a suit to enforce the resolutory condition. Revised Civil Code, Articles 2045, 2046, 2047. The facts are not disputed. Only a question of law is involved.
 

 According to the agreed statement of-facts, the Louis Werner Saw Mill Company, on June 23, 1930, sold 80 acres of land in Ouachita Parish to E. J. White for $800, of which amount $400 was paid in cash. It was agreed that the balance of the purchase price, $400, would be paid one year from the date of the sale, or on June 23, 1931.
 

 To represent the balance of the purchase price, the vendee gave his note, due in one year, secured by mortgage and vendor’s lien on the land sold. The act of sale containing the mortgage and privilege was duly recorded in both the conveyance and the mortgage records of the Parish of Ouachita on June 25, 1930. In the act of sale and mortgage, the vendee agreed that he would not alienate, deteriorate, or encumber the property to the prejudice of the rights of the vendor. The balance of the purchase price, $400, was never paid by White, the purchaser, or by anyone else.
 

 On November 12, 1940, which was more than 10 years after the sale of the land and the recordation of the mortgage but less than 10 years from the maturity of the note representing the credit portion of the price, E. J. White sold the property to his daughter for the purported consideration of $100.
 

 This suit was instituted by the original vendor, Louis Werner Saw Mill Company, against the original vendee, E. J. White, on June 10, 1941, which was more than 10 years after the recordation of the mortgage and vendor’s lien but less than 10 years after the maturity of the note representing the credit portion of the purchase price.
 

 The purpose of the suit was to dissolve the sale, or set it aside, for the non-payment of the deferred portion of the purchase price. The suit was instituted against E. J. White, the original purchaser of the property, and his defense was that he had sold the land on November 12, 1940, and that “this sale was made more than five years after the due date of the mortgage
 
 *247
 
 note and more than ten years after the granting of the mortgage by your respondent to the. plaintiff and, therefore, your respondent specially pleads the prescription of five and ten years”.
 

 There was judgment in the district court in favor of the Louis Werner Saw Mill Company and against the defendant E. J. White, “rescinding and dissolving that certain sale from Louis Werner Saw Mill Company to E. J. White, dated June 23, 1930”, and decreeing that “Louis Werner Saw Mill Company have and recover said land, free from any mortgages, claims, liens, encumbrances or sales of said land or a portion thereof by the defendant, E. J. White; and more particularly that sale by E. J. White to Miss Willie Evelyn White, dated the 12 day of November, 1941 [1940]”.
 

 The plaintiff appealed to the Court of Appeal, Second Circuit. The Court of Appeal reversed the judgment of the district court, its decree reading as follows:
 

 “For the reasons herein assigned, the judgment appealed from is annulled, avoided and reversed; plaintiff’s demand is hereby rejected and its suit is dismissed at its cost.”
 

 Thereupon the plaintiff applied to this court for writs, which were granted.
 

 Counsel for plaintiff and counsel for defendant filed in the record an agreed stipulation of facts, and in Paragraph VII of that stipulation it is agreed that:
 

 “* * * based on the aforesaid statement of facts, the sole point of law involved in this case is whether or not the resolutory condition in an act of sale can be enforced ten years after the date of the recordation of the mortgage but within ten years of the maturity date of the mortgage note, where the property has been, sold to a third 'party more than ten years after the recordation of the mortgage but within ten years of the maturity of the note.”
 

 The plaintiff’s purpose in bringing this suit was not to enforce the contract of sale but to dissolve it, to set it aside. As the Court of Appeal said, “The note is not sued upon. There is no demand nor prayer for the enforcement of the mortgage and privilege”. The suit is one to enforce the resolutory condition.
 

 This court has repeatedly and consistently held that the right to dissolve or set aside a sale for the non-payment of the purchase price is an independent, substantive remedy which is in no wise dependent upon the existence of a mortgage or a privilege. As Judge Spencer said in the case of Stevenson v. Brown, 32 La.Ann. 461:
 

 “A demand in resolution is a demand for the property itself, and embraces in it the abrogation of any and all alienations and encumbrances placed upon it by the vendee.”
 

 In that case, the court said further:
 

 “The fact that the vendor has lost, or not preserved, his vendor’s lien, or mortgage, presents no sort of obstacle to the exercise of this right of resolution.”
 

 In the case of McKenzie v. Bacon, 41 La.Ann. 6, 5 So. 640, 642, the court, speaking
 
 *249
 
 through Judge Poche, approved the ruling in the case of Stevenson v. Brown, supra. The court said:
 

 “It was said in the case last referred to [Stevenson v. Brown], and it has always been previously held, in actions on the dissolving condition, that ‘The question of registry has nothing to do with the case. The right of resolution is an independent substantive remedy, and is in nowise dependent, upon the existence of a mortgage or privilege.’ ”
 

 In McKenzie v. Bacon it was held, as it had been held in Stevenson v. Brown, that the non-payment of the purchase price constituted a resolutory condition in the contract of sale, and that its effect is in no manner affected by the fact that the vendor has failed to preserve his privilege.
 

 In the case of Heirs of Castle v. Floyd, 38 La.Ann. 583, this court, speaking through Judge Watkins, said:
 

 “In our opinion the two remedies of the vendor — one for the enforcement of the contract and the other for the resolution of it- — are diametrically opposed, in the very nature of things.
 

 “A suit to enforce the vendor’s lien is an affirmance of the contract; while a suit for the resolution of it must be preceded by the restitution of the purchase notes and such part of the price as shall have been paid to the vendee, and same is a condition precedent to institution of the suit.”
 

 In an earlier case, Johnson v. Bloodworth, 12 La.Ann. 699, Judge Spofford, speaking for the court, said:
 

 “It is true that the vendor of an immovable or slave only preserves his privilege as against third persons by recording the act of sale. C.C. 3238. But it is impossible to confound the resolutory action with the vendor’s privilege. The former is not a mere appendage of the latter. It is a distinct substantive, and independent right or remedy.”
 

 In a much later case, Ragsdale v. Ragsdale, 105 La. 405, 29 So. 906, this court referred to, and reaffirmed, the rulings in the above cited cases.
 

 There are other cases in which this court held emphatically, as was held in the above cited cases, that the right of a vendor to “resolve”, or “dissolve”, a sale for the nonpayment of the purchase price is an independent, substantive remedy which is in no wise dependent upon the existence of a mortgage or privilege. The rule announced in these cases has never been questioned, so far as we know. Nor can it be, we think, because it is rooted in, and grows out of, articles 2045, 2046, and 2047 of the Revised Civil Code, which articles are found under the heading “Of the Resolutory Condition”. The remedy prescribed by these articles is to have the contract “dissolved” in case either party to it defaults or fails to comply with his engagements. The remedy afforded by these articles to a vendor who has not received the purchase price of the thing sold, in whole or in part, has no connection whatever with, but is diametrically opposed to, the remedy which he has under other articles of the Code for the enforcement of the contract.
 

 
 *251
 
 Article 2045 of the Code defines the resolutory condition. “The dissolving condition,” says the Code, “is that which, when .accomplished, operates the revocation of the obligation, placing matters in the same state as though the obligation had not existed. It does not suspend the execution of the obligation; it only obliges the creditor to restore what he has received, in case the event provided for in the condition takes place.”
 

 Article 2046 says that:
 

 “A resolutory condition is implied in all commutative contracts, to take effect, in case either of the parties do not comply with his engagements * * *.” In such case, says this article — that is, in case either of the parties does not comply with his engagements — “the contract is not dissolved of right; the party complaining of a breach of the contract
 
 may either sue for its dissolution,
 
 with damages,
 
 or,
 
 if the circumstances of the case permit,
 
 demand a specific performance”.
 
 (Italics are the writer’s.)
 

 Article 2047 provides that:
 

 “In all cases the dissolution of a contract may be demanded by suit or by exception; and when the resolutory condition is an event, not depending on the will of either party, the contract is dissolved of right; but, in- other cases, it must be sued for, and the party in default may, according to [the] circumstances, have a further time allowed for the performance of the condition.”
 

 The failure of the vendee to pay the price is a “dissolving condition”, or a “resolutory condition”; it is an event which gives to the creditor an absolute right to sue for the dissolution of the sale. This right is inherent in all credit sales. It is grounded upon the just and equitable principle that the vendee should not be permitted to withhold the price and keep the things. The contract of sale “is an agreement by which one gives a thing for a price in current money, and the other gives the price in order to have the thing itself”. Revised Civil Code, Article 2439. The principal obligation of the buyer is “To pay the price of sale”. Revised Civil Code, Article 2549. When the vendee fails to pay the price, he defaults on his obligation, the contract is breached, and the vendor may, under the articles of the Code, sue for its dissolution. The effect of the dissolution is to place “matters in the same state as though the obligation had not existed”. The vendor gets the property back, and the vendee is discharged from his obligation to pay the price. If he has paid part of the price, that which he has paid is restored to him.
 

 In the case of School Directors v. Anderson, 28 La.Ann. 739, this court, following the ruling in Templeman v. Pegues, 24 La.Ann. 537, held that the resolutory action is prescribed only by 10 years, and that “the prescription of the notes given as evidence of the price does not affect that right of action, the right to dissolve not being an accessory to but different from the right to enforce the payment of the price, having its origin in the failure to pay the price, and resting on the principle of justice that
 
 *253
 
 the vendee should not retain both the thing and the price”.
 

 In the case of Latour v. Latour, 134 La. 342, 64 So. 133, it was held that “An action to annul a sale for nonpayment of the price is barred by the prescription of ten years, which, in cases of credit sales, begins to run from the maturity of the first installment” (citing Gonsoulin v. John I. Adams & Co., 28 La.Ann. 598, and George v. Knox, 23 La.Ann. 354, 355).
 

 This court has repeatedly and consistently held that the action to dissolve a sale for the non-payment of the purchase price accrues at the moment the buyer defaults on the payment of the credit portion of the price. In the recent case of Louisiana Truck & Orange Land Co. v. Page, 199 La. 1, 5 So.2d 365, it was held that a suit to set aside a sale of real estate for non-payment of the purchase price is a personal action and is prescribed by 10 years.
 

 In the case of R. E. E. De Montluzin Co., Ltd., v. New Orleans & N. E. R. Co., 166 La. 822, 118 So. 33, 35, in speaking of the action to enforce the resolutory condition, the court said:
 

 “The action, although it may result in the recovery of immovable property, is regarded as a personal action, and as barred by the prescription, liberandi causa, of ten years, established by article 3544 of the Civil Code, by which all personal actions not otherwise provided for are prescribed. George v. Lewis, 11 La.Ann. 654. That this prescription is applicable to the resolutory action, see, also, Jones v. Crocker, 1 La.Ann. 440; Hunter v. Williams, 16 La.Ann. 129; Gonsoulin v. Adams & Co., 28 La.Ann. 598; School Directors v. Anderson, 28 La.Ann. 739; Latour v. Latour, 134 La. 342, 64 So. 133.”
 

 In the case at bar, the vendee’s note representing the credit portion of the price was dated June 23, 1930, and was payable in one year, or on June 23, 1931. The note was never paid. Therefore the default occurred on June 23, 1931. The suit to dissolve the sale was filed on June 10, 1941, or within the prescriptive period of 10 years. Therefore, under the jurisprudence of this state, the judgment of the district court which dissolved the sale was correct.
 

 But the Court of Appeal, Judge Hamiter dissenting, reversed the judgment. The court did not overlook the jurisprudence established prior to the year 1924, for in the course of its opinion it said:
 

 “The Supreme Court prior to 1924 repeatedly held that under the original article, even though the purchase price note be prescribed, this fact would have no effect upon the right to sue for dissolution of the sale for non-payment of the price as that right did not prescribe until after the lapse of ten years from maturity of the note.”
 

 The Court of Appeal held that in this case, when the note of E.. J. White evidencing the unpaid portion of the purchase. price of the land was extinguished by the prescription of five years, the right to dissolve the sale was extinguished also, or died with the note. In other words, in a
 
 *255
 
 case of this kind, when the obligation to pay the note is extinguished, the right to dissolve disappears.
 

 The ruling 6f the court was grounded upon its interpretation of Act No. 108 of 1924, which amended and reenacted Article 2561 of the Revised Civil Code. That article of the Code before it was amended read as follows:
 

 “If the buyer does not pay the price, the seller may sue for the dissolution of the sale.”
 

 As amended and reenacted, the article reads as follows:'
 

 “If the buyer does not pay the price the seller may sue 'for the dissolution of the sale. This right of dissolution shall be an accessory of the credit- representing the price, and if it be held by more than one person all must join in the demand for dissolution; but if any refuse, the others by paying the amount due the parties who refuse shall become subrogated to their rights.”
 

 The act contains no repealing clause.
 

 The Court of Appeal has, we think, erred in its interpretation of the article of the Code as amended. The article as amended declares that “This right of dissolution shall be an accessory of the credit representing the price”. The Court of Appeal held that, since the word “accessory” was written into this clause, the effect of the amendment was to put the right to dissolve, as regards the term of its existence, on a parity with a mortgage, which, according to Article 3284 of the Revised Civil Code, “is accessory to a principal obligation which it is designed to strengthen, and of which it is to secure the execution”, and which, according to Article 3285 of the Code, disappears, or ceases to exist, “where the principal debt is extinguished”.
 

 Speaking of the intent and purpose of the amendment and of what was accomplished 'by it, the Court of Appeal said:
 

 “We think it was to put the right to dissolve, as regards the term of its existence, on all-fours with the companion accessory rights of mortgage and vendor’s privilege. If this be not true, then the use of the word ‘accessory’ in the amendment was entirely superfluous and, to us, without any real significance.”
 

 We cannot sanction this interpretation of the article as amended.
 

 By amending and reenacting Article 2561 of the Code so as to provide that “This right of dissolution shall be an accessory of the credit representing the price”, the Legislature evidently did not intend to put the “right to dissolve” on “all-fours” with the accessory right of mortgage and vendor’s privilege “as regards the term of its existence”. In other words, it did not intend to change the prescriptive period applicable to actions to enforce the resolutory condition. What the Court of Appeal held was that, when, in a case of this kind the note representing the credit portion of the price is extinguished by the prescription of five years, the action to enforce the resolutory condition is extinguished, or dies, with it.
 

 If that was the purpose of the amendment, its purpose failed, because un
 
 *257
 
 der the settled jurisprudence of this state a suit to set aside, or dissolve, a sale for the non-payment of the purchase price is a personal action and is prescribed only by 10 years, as provided in Article 3544 of the Revised Civil Code, and the 10-year prescriptive period begins to run on the date of default. The Legislature could not, by amending and reenacting Article 2561 of the Code, which in no sense relates to the prescription of actions, change the period by which personal actions are prescribed, without even mentioning Article 3544 of the Code.
 

 Article 2561 of the Code relates exclusively to the right to dissolve or set sales aside. The right conferred by that article is in no sense related or akin to the accessory right of mortgage, which, according to the plain terms of the Code, aids in the enforcement of contracts. See Articles 3279, 3282, and 3284 of the Revised Civil Code. The action to enforce the resolutory condition, or to dissolve the contract, not only is different from, but is diametrically opposed to, the action to enforce the contract.
 

 The sole purpose of the amendment to Article 2561 of the Code was to aid or facilitate the action to enforce the resolutory condition. The Court of Appeal conceded that this was accomplished. But it says that the amendment did more than that; that its effect was to change the rules relating to the period of prescription applicable to such actions.
 

 In order to reach a correct conclusion as to the purpose of the amendment, we must keep in mind certain jurisprudence relating to the enforcement of the resolutory condition.
 

 The established rules under the jurisprudence were that the right to dissolve, or set aside, a sale for the non-payment of the purchase price, or the deferred portion thereof, was personal to the vendor and not transferable, and did not pass with the transfer of the note or notes representing the credit portion of the price; that, in cases where the vendor of the property transferred the note or notes, the only right acquired by the transferee was to enforce the payment of the notes or the mortgage securing them; that the endorsee of the notes did not acquire the right to rescind or dissolve the sale; that the right to resolve the sale was not “accessory to the note evidencing the unpaid price”, and that therefore the right to resolve was not transmitted as an incident of the sale of the note or credit. In some of the cases it was said that the right to resolve did not pass to the transferee of the notes without a special contract to that effect, subrogating the transferee to all of the rights held by the original vendor of the property; and held also that the sale of the note or notes “without recourse” and the reacquisition of them by the original vendor did not restore to him the right to dissolve. The established rule was that all parties who had interests in the credit had to join as parties plaintiff, or the action would fall, and there was no statutory provision whereby dissenting co-owners of the credit could be compelled to surrender their interests to other co-owners who desired to exercise the right to dissolve. The following cases are in point: Augusta Ins. Co. v.
 
 *259
 
 Packwood, 9 La.Ann. 74; Swan v. Gayle, 24 La.Ann. 498; School Directors v. Anderson, 28 La.Ann. 739; Heirs of Castle v. Floyd, 38 La.Ann. 583; Hamilton v. State National Bank, 39 La.Ann. 932, 3 So. 126; People’s Bank v. Cage, 40 La.Ann. 138, 3 So. 721; McKenzie v. Bacon, 41 La.Ann. 6, 5 So. 640; Payne v. Nowell, 41 La.Ann. 852, 6 So. 636; Ragsdale v. Ragsdale, 105 La. 405, 29 So. 906; Bankston v. Owl Bayou Cypress Co., 117 La. 1053, 42 So. 500.
 

 Under these technical and complicated rules, the enforcement of the resolutory condition was greatly hindered, was extremely difficult, and under some circumstances the right to dissolve could not be exercised. The transferee of the credit could not avail himself of the right without formal subrogation from the transferer, and, if the credit was held by more than one person, all had to join as plaintiffs in order to maintain the action. If some refused, the others were helpless. Those who refused could not be forced to join in the action.
 

 Under the amendment, the right to dissolve is available to the holder of the credit, or any part of it, without the necessity of a formal subrogation of that right to such holder or holders by the original vendor of the property and holder of the credit. The amendment makes the “right of dissolution”, or right to dissolve, “an accessory of the credit representing the price”. This means that the right is attached to, and accompanies, the credit into whatever hands it may pass. One of the definitions of the word “accessory” given by Webster’s New International Dictionary is “an adjunct or accompaniment”, and it is in that sense in which the word is used in the amendment. That is the sense in which it was used in Swan v. Gayle, supra. The right to dissolve is now an appendage of the credit, in the sense that it is attached to, and follows, the credit.
 

 The second clause of the amendment, which says that if “it” — that is, the credit— “be held by more than one person all must join in the demand for dissolution”, made no change in what was always the rule.
 

 The last clause of the amendment provides that, if “any” — that is, any one or more of those who hold interests in the credit — “refuse”—that is, refuse to “join in the demand for dissolution” — , the “others by paying the amount due the parties who refuse shall become subrogated to their rights”.
 

 Before the amendment was adopted, those holding interests in the credit and desiring to enforce the resolutory condition could not exercise that right if the others refused to join in the action. The amendment affords them a remedy.
 

 As regards the prescriptive period applicable to the action to resolve, the amendment made no change.
 

 For the reasons assigned, the judgment of the Court of Appeal is reversed and set aside, and the judgment of the district court is affirmed; all costs to be paid by-defendant E. J. White.
 

 HAMITER, J., recused.